### FENSTEMACHER v. PENNSYLVANIA R. CO. et al.

(District Court, E. D. Pennsylvania. March, 1922.)

No. 2531.

1. Courts ⊜⟶347—Objective of rule 29 is to expedite the final decision.

The object of rule 29 is to expedite the final decision of cases by affording a mode of preliminary disposition of any questions of law which arise, and some of these questions may go to the whole cause of action, and some to a part of it, and some may be really trial questions, and yet may be ruled in advance of trial.

2. Master and servant ⊜⟶69—Courts will not enjoin election of representatives of employees under Transportation Act and all acts in pursuance of such election.

Where a carrier called on employees to elect representatives for a conference under the Transportation Act (Comp. St. Ann. Supp. 1923, § 10071¼ et seq.), and discarded all votes cast for individuals not in its employ, and the Labor Board held the election a nullity and made a formal order on the employer to confer with the representatives of the employees, the court will not grant a prayer for injunction in suit by employees to enjoin the election and all acts in pursuance of it; the court having no control of the making of a bargain, and the only duty left being to determine the consequences of the election already held.

In Equity. Bill by C. H. Fenstemacher against the Pennsylvania Railroad Company and others. On motions under equity rule 29. Rulings made.

See, also, 296 Fed. 210.

J. Washington Logue, of Philadelphia, Pa., for plaintiff.
John Hampton Barnes, of Philadelphia, Pa., for defendants.

DICKINSON, District Judge. [1] The objective of rule 29 is to expedite the final decision of cases by affording a mode of disposing preliminarily of any questions of law which arise. Some of these questions may go to the whole cause of action, and some to a part of it. Some may be really trial questions, and yet may well be ruled in advance of trial. Such of them as go to the cause of action may be

raised by motion to dismiss, and any by answer. Such a motion was made in this cause, but the only ground upon which it was pressed to a ruling, and the only point ruled, was that this controversy was sui generis, and that the plaintiff might maintain his bill as the official representative of the organization to which the employees of the defendant belonged, without an averment that he was one of such employees, or had any direct, personal, individual interest in the subject-matter of the controversy, or was one of a class having such an interest. Other questions, which likewise go to the whole complaint, have been raised by the answer, and so far as, by presenting and disposing of them in limine, time, trouble, and expense can be saved to the parties, we, in the exercise of the discretion committed to us by rule 29, so dispose of them.

### The Fact Situation.

The facts out of which these questions of law arise, are, of course, not in dispute. Indeed, so far as concerns the present stage reached, the whole controversy is necessarily one over propositions of law. We learn from the pleadings the rights asserted and denied, the wrong of which complaint is made, and the relief prayed. Without attempting any accurate formal statement, the complaint of the plaintiff may be thus outlined:

The defendant is an interstate carrier, subject to the provisions of the Act of Congress (Comp. St. Ann. Supp. 1923, § 10071¼ et seq.) constituting the Labor Board. The general aim and purpose of this legislation is to save interstate traffic from interruption, by affording every possible legal aid to the adjustment of disputes between carriers and those in their service over rates of wages or working rules and conditions. To this end carriers are enjoined to confer, and, if possible, agree, with representatives of their employees. Any dispute not thus adjusted in such conference "shall be referred by the parties" to the board for decision. Any dispute not so disposed of may be decided by the board on application of any party in interest, or on its own initiative. A distinction is thus made between disputes which are made the subject of conference, and those with which a conference fails to deal. There is also a distinction made between disputes concerning working rules and conditions and disputes affecting wages and salaries, but so far as we can discover the distinction is for our purposes unimportant. In the absence of any decision reached in conference, the powers of the board may be invoked by the chief executive of the carrier, or of any organization of employees, or by a designated number of unorganized employees. The plaintiff is the executive of such an organization, to which it is asserted a majority of the employees of the defendant interested in the present controversy belong. A controversy, such as contemplated by the act of Congress, is averred to have arisen. Of this dispute the board has taken cognizance. The course of that dispute has, however, been turned aside from one over wages or work regulations, and has become one over rights.

Wage and work condition disputes may be said, if the expression is allowable, to have been inherited by the board, in that they were

pending when the board was created, and jurisdiction of them was assumed without question by any one. These disputes affected many parties, including the defendant and organizations among its employees. One position taken by the defendant was that it was under no obligation to confer other than with the chosen representatives of its own employees, selected by a majority. In this position it was supported by the board. The point is an important one, in that, if the defendant met in conference representatives of its employees, and an agreement was reached upon all matters still open to possible dispute, then there would be no dispute to be referred to the board, and the agreement reached would control. To this end it proceeded to have held an election by the employees concerned under rules established by itself. Without going into details, these rules were framed so as to assure the result that no one other than an employee of the defendant was eligible to be chosen a representative. All ballots cast for other candidates than individuals who were employees were thrown out, and the election declared of representatives for whom a relatively small number of votes had been cast. A conference between representatives thus chosen and the carrier meant that the great majority of the employees concerned would be bound by an agreement to which they were in no sense a party.

There is no need to go further into the several stages of the controversy than to state that the Labor Board decided the election thus held to be a nullity, and upon the refusal of the defendant to conduct another election to be held under rules prescribed by the board, made a formal order upon the defendant that it confer on or before August 15, 1921, with (among other representatives of its employees) the duly authorized representative of the organization which the plaintiff represents. With this order the defendant has refused and still refuses to comply. The plaintiff thereupon, averring his willingness to confer, has filed his bill, one prayer of which (and indeed the only direct and specific prayer) is that the said election and all acts in pursuance of it be enjoined.

The answer set up is that the court is without the legal power to make any such order, and challenges the legal wisdom of its so doing, if it is found to have the power.

## The First Question.

This then is the first question to be determined. The court is asked to decide it in limine for the practical reason that, if it is decided in advance of trial, a long inquiry may be saved, and that it can be ruled as well before the inquiry as during or after it. As all parties concur in the practical wisdom of this course, and as it is in accord with the purpose of rule 29, we adopt it.

## Discussion.

[2] As often remarked, but as often overlooked, every matter of litigation which is worth while has its practical side. No matter how interesting or in themselves important, the academic questions raised may be, if they "get us nowhere" they are of no real value. Such cases do not serve the sometimes useful purpose of test cases, nor

meet the ends of those who advocate the introduction of the system of calling upon the courts to declare the law of cases before they otherwise arise through litigation. The proposition here presented is wholly a cui bono proposition. Of what use is a rendered judgment which has no legal results? The position of the plaintiff in part is, and in this position it claims to have the support of the Labor Board, that the conference commanded by the law is one between the carrier and the labor organization to which those of the employees who are organized belong, together with the representatives of those employees who have no such organization. The employees have the right (a right conferred, not for their benefit, but for a public purpose) to the conference thus outlined, and if the employer sets up other representatives of the employees, any agreement reached with them is a nullity to which the Labor Board may deny all efficacy. Indeed, this is the effect of the order which the board has made. Why, then, should any court concern itself to restrain the doing of something which is nothing when done?

The question of the authority of the court suggests, among others, this thought. All must agree that a controversy which can be settled only by an agreement wholly voluntary or reached upon compulsion is a controversy with which the courts without statutory command have nothing to do. With the making of bargains between those able to act for themselves the courts have no concern. What control, then, have the courts over the making of a bargain here, beyond that which some statute enjoins them to exert? If they have none, the crucial inquiry becomes the one of what statute has imposed upon them the duty of interference in the choice the parties to the dispute may make of their representatives? We have been pointed to none, and we know of none. More than all else, it would appear as a legal certainty from the averments of this bill that the election prayed to be enjoined was held before the court was asked to act. The only duty left is to determine, not whether the election should be held, but to determine the consequences. This duty the law-making power has laid upon the Labor Board, and not upon the courts. Moreover, as the law now stands, the board may act and proceed to the performance of its duties, notwithstanding the choice in accordance with the act of Congress or the ruling of the board. Labor Board v. Penna. R. R. (C. C. A. 7th Circuit) 282 Fed. 701.

The act of Congress deals with every possible situation; at least, with every contingency which can be foreseen. It deals fully with the whole subject, although experience may suggest additional legislation. The act begins with a recognition of the truth that the relation of employed and employer arises out of contract which is the outcome of bargaining. The first thought expressed is that the parties confer, and both are enjoined to this end. Any one of three situations may be presented. The parties may confer and agree. If so, as the parties themselves are primarily alone affected, and the public only secondarily, the law does not further concern itself with the matter. The parties may confer, but fail to agree. If so, the public may be affected by the dispute, and the law provides a mode of adjusting it by the

requirement that "it shall be referred by the parties" to the board. One or both the parties may refuse to confer. The consequences again may affect the public, and the law provides a way to end the dispute. Finally, the power conferred upon the board to act whenever, in its judgment, the public is subjected to inconvenience, completes the full round of needed remedies. Whether the failure or refusal to get rid of the dispute results from a refusal to confer, or a refusal or failure to agree, the remedy is ready to be applied, nor do we see that the powers of the board are affected, whether the reference to the board under section 301 is automatic, or whether the board acts at the instance of one party, or only both, because, if it does not act under this section, it acts under one or both of the later sections. The end contemplated is that the dispute shall end, in order that interruption of traffic may be avoided.

### The Other Questions.

We do not see that anything is to be gained by deciding in advance of trial the other questions discussed. There are no facts to be found, because there are none in dispute. In consequence, there is no saving promised. On the contrary, counsel may deem it to be of benefit to have any ruling to be made deferred.

A word of explanation of the trial situation will make the need of a continuance of the formal trial clear. The trial was interrupted in order to raise these questions of law. The one of which we have disposed will save the taking of much testimony.

The other question discussed might be now decided, as if upon a hearing on bill and answer; but it can just as well be determined as a trial question, and, as a formal trial must be had, all questions other than above discussed are reversed.

We state the conclusions so far reached as follows:

### Conclusions.

1. Prayer 3 of the bill must be denied.

2. No ruling is now made respecting what relief may be granted the plaintiff under the averments of his bill, and the prayer for general relief.

3. The cause may be set down for a continuance of the trial by either party.

Exceptions are allowed to the respective parties to the rulings made